WILLIAM MANN CO. v. KALAMAZOO LOOSE LEAF BINDER CO. et al.

(Circuit Court, S. D. New York. March 3, 1909.)

PATENTS (§ 328*)—INFRINGEMENT—TEMPORARY BINDER.

The Leslie patent No. 603,428, for a temporary binder, consisting of two back pieces, a cord connecting them and passing through one, and means for shortening such cord so as to bring the back pieces together uniformly, is for an improvement on the prior art, and the combination as a whole discloses patentable invention; but the patent is entitled to only a narrow construction, and is limited to the precise device shown and described. As so construed, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit to restrain alleged infringement of United States letters patent for temporary binder, and for an accounting.

E. Hayward Fairbanks (Samuel E. Darby, of counsel), for complainant.

Chappell and Earl (Frederick C. McLaughlin, of counsel), for defendants.

RAY, District Judge. The complainant claims infringement of claims 3, 4, 7, and 12 of United States letters patent to William Mann Company, assignee of Leon M. Leslie, the inventor, No. 603,428, issued May 3, 1898, on application filed January 23, 1897, for temporary binder.

The claims alleged to be infringed read as follows:

"(3) In a binder, the combination of the back pieces, with the single cable or cord connecting said back pieces and passing through one of them, and means for effectually shortening said cord.

"(4) In a binder, the combination with the apertured sheets or leaves, of the back pieces, the single cord or cable connected to one of said back pieces and passing through the apertures in said sheets, and means for effectually shortening said cord whereby the back pieces will be drawn together and the sheets clamped thereby."

"(7) In a binder, the combination of the back pieces, and the cord or cable, attached at its ends to one of said back pieces with the other back piece

movable relative to the first back piece, and connections between said second back piece and the cord, the continued operation of which first adjusts said cord so that the tension is uniform throughout its length and then effectually shortens it so as to cause said back pieces to approach each other, substantially as described."

"(12) In a binder, the combination of the back pieces, with the single cable or cord connecting said back pieces and passing through one of them, and means for effectually shortening said cable to hold unyieldingly said back pieces and any desired number of sheets, substantially as described."

Resolved into its elements, claim 3 calls, in a binder, for the combination of (1) the back pieces, (2) a single cable or cord connecting said back pieces and passing through one of them, and (3) means for effectually shortening said cord.

So far as this claim is concerned, read by itself, it would be answered by two flat sticks of metal or wood (back pieces) which, when brought together, would operate to bind leaves of paper between them, connected by a cable or cord of any flexible material having one end fastened to one back piece and the free end then passing through an aperture in the other, from one side to the other, one end to the other, or otherwise, and then being fastened to the other back piece and adding some sort of windlass arrangement or take-up device for this cord or cable, which, when operated, would wind it up and thereby shorten the cord or cable. This, aside from the specifications, in view of the prior art, would be clearly void for want of patentable invention.

Claim 4 adds apertured sheets or leaves, and while the cord is attached or connected to one of the back pieces only, as expressed in the claim, and only passes through the apertures in the sheets, still, as we have some sort of means for effectually shortening the cord— that is, taking it up or winding it up, "whereby the back pieces will be drawn together and the sheets clamped thereby"—we are to infer from the claim itself that the cord is in some manner connected to the second back piece, so that when "shortened," as the claim has it, the two back pieces will be drawn together.

Claim 12 is the same as claim 3, except that it adds or describes the purpose of shortening the cable or cord, viz., "to hold unyieldingly said back pieces and any desired number of sheets, substantially as described."

Claim 7 is more specific and certain. We have as elements in combination, in a binder (1) the back pieces, (2) the cord or cable attached at its ends to one of said back pieces, with the other back piece movable relative to the first back piece, (3) "connections" between the second back piece and the cord, the continued operation of which "connections" first adjusts said cord so that the tension is uniform throughout its length and then effectually shortens it (that is, takes or winds it up), so as to cause said back pieces to approach each other, substantially as described. The "means for effectually shortening said cord" is the same as "connections between said second back piece and cord." On reading the other claims, and turning to the specifications, we find that the claims in issue have nothing to do with the two pieces of levers or lazy tongs. The specifications state that "my improvements relate to that class of temporary binders known in the trade as" per-

petual ledgers, "and designed to constitute books which, in ordinary use, are firmly bound, yet any leaf of which can be readily extracted without displacing or releasing the others from the binder."

The patent does not show or describe but one construction, but does say:

"It will be understood that my invention is not limited to the exact structure shown and described, but includes such modifications thereof and constructions as are indicated by the terms of the following claims as interpreted by the state of the art."

That is, while the patentee showed one form of construction only, he has claimed everything broadly, so far as the state of the art permits him to do so. He claims all back pieces, a single cord or cable, and all means for shortening or winding or taking up a cord or cable so as to shorten it, and all apertural leaves. He must be limited, if at all, by a reference to the prior art.

The sheets, or leaves, of his book or binder, have perforations to receive the cord or cable which passes through and carries and supports them, when not bound and held firmly together by the back pieces. Even then the cord passing through them prevents any slipping or displacement. A slit, less in width than the diameter of the aperture, extends therefrom to the edge of the leaf, so that the cord may be slipped along in this slit into the aperture, and as there is an aperture at each end of the sheet and near the corner nearest the back of the binder, and the apertures proper are at the same distance apart as the two parts of the cord as they pass, the one part from the one back piece to the other at the lower part of the page, and the other part back again at the upper part of the page after passing through the second back piece from end to end, the leaf is held in position by the cord when drawn taut. By slightly concaving the sheets they are easily engaged with or disengaged from the cord or cable. The back pieces themselves are merely flat pieces of wood or metal, and may be of any suitable width and of any length to accommodate the sheet of paper used for leaves. As to back pieces and cords and cables and leaves, it is unnecessary to describe at length the prior art. All were old. So of "means" and "connections between the second back piece and the cord" for drawing the back pieces toward each other so as to bind the leaves when (so to speak) strung on the cord firmly, as in a bound book. I discover nothing in complainant's patent, aside from mere form or arrangement, that differs materially from the prior art, except the means for shortening; that is, winding up the cord or cable for the purpose of drawing the back pieces toward each other and holding them in position so as to grip and bind the sheets. I find nothing particularly new and novel in these "connections" between the cord and back piece, or "means for effectually shortening the cord," in and of themselves, but the combination, as a whole, may, I think, disclose such improvement on the prior art as to show patentable invention. It is not of a high order, however, and does not permit any considerable range of equivalents. If there be conception amounting to patentable invention, it resides in the means adopted and made an element of the combination for

taking up the cord or cable uniformly and equally from two different directions at the same time and releasing it in the same way.

With complainant's complete binder, containing leaves, open before us, we have the second back piece, A, carrying the take-up device, at our left, hinged to the left-hand or (when closed) top cover, and the first back piece, B (so referred to in claim 7 of the patent), at our right. I shall refer to them hereafter as "A" and "B." When the ledger is closed, A is the upper back piece. The cord or cable is attached, in any suitable manner, to the interior face (the face next the leaves) of B at a point near its end, and passes to the left through the apertures in the leaves and into and through an aperture in the base of A at the same distance from its end as was the cord fastened to B from its end, thence over a pulley or roller fastened to the outer face of A proper (which has a cap or cover, and hence we will refer to it as hollow, and also speak of passing through it from end to end, but A proper is the base and not the cap or cover) or the base of A, and thence through A towards the other end of A. At a point midway the ends of A the cord passes through a diagonally disposed aperture in a revoluble spindle or post, held in position between the base and cover of A and pivoted therein, and then onto another pulley or roller, near the end of the base on the outer face of A proper, and over such pulley and through another aperture in the base of A proper, and then through the apertures in the leaves to B, where it is fastened thereto on its interior face at the same distance from the end as was the other end of the cord fastened thereto at or near the other end of B. The revoluble spindle mentioned carries a ratchet placed midway the base and cover of A, which revolves with the spindle and is carried with it in either direction. The mouths of the aperture in the spindle through which the cord or cable passes are located one below and the other above the ratchet, and, assuming that the cord is evenly divided as to length by the spindle, it is seen that by continuously turning the spindle in one direction the cord or cable is wound thereon and taken up evenly from both directions, so that A and B are drawn towards each other, and this drawing may be continued until the leaves on the cords between them are held or bound tightly and securely between these back pieces. To prevent a backward movement of the spindle and a consequent unwinding of the cord or cable, A, on the outer face of its base and near the spindle, is provided with a spring-pressed dog which engages with the ratchet and holds it and the spindle securely until released by moving the tail of the dog, which projects from the side of A, and is readily reached and moved by the hand of the operator. When moved and the dog disengaged from the ratchet, the spindle will turn in the other direction, and the two back pieces are easily separated as the cord unwinds and the leaves are loosened on the cord or cable, and may be then separated and one or more of them removed and one or more new ones inserted. The outer end of the spindle is pivoted in the cover of A, as stated, and two notches are cut in this end of the spindle for the insertion of a key, and by turning this key we wind or take up the cable or cord and shorten the free part thereof holding the leaves. The space between the base of A and the ratchet is equal to that between the

ratchet and the cover, and these spaces are sufficient to permit the free coiling of the cord or cable about the spindle. Each element of this combination is old in this art, but this combination of such elements is new, so far as I can discover. The back pieces, leaves with notches, cord, or cable, the pulleys or rollers, the spindle provided with a ratchet and dog, with projecting tail to engage or disengage it with the ratchet, are all old, although the precise form of ratchet is not shown in the prior art. I think this immaterial. It became a mere matter of selection in choosing the form of spindle and ratchet; and the same may be said of the spring-controlled dog. In fact, I do not understand that any patentable novelty is claimed in these appliances of themselves or in the pulleys. No one of them performs any new function. As the spindle turns it carries the ratchet, which is held by the dog controlled by the spring. As the cord or cable passes through the aperture in the spindle it may be pulled in either direction by hand, by pulling A away from B, so as to divide it in two equal parts, one part on each side of the spindle, and insure an even and equal pull at both ends of back piece, B, when the spindle is turned. Unless the cord is thus evened up or divided by hand before we commence turning the spindle, it cannot be done thereafter by the pull of winding, as the cord turns such a short corner at the entrance to the aperture in the spindle that it binds and will not run through and evenly divide itself by any pull or strain the hand of the operator can exert on the key. This is proved by actual and repeated experiments.

The applicant, Leslie, under date of September 22, 1897, in writing the Patent Office, defined his invention and stated in what it consisted, as he understood it, viz.:

"A reconsideration and allowance of claims 12, 13, 14, 15, 23, 24, and 25, as amended, is respectfully requested, as these claims are limited to the employment of a single cable as distinguished from the employment of two or more cables, as has been uniformly done in the prior art. The use of this single cable with its mechanism for tautening the cable uniformly throughout its length, and thereby binding the leaves firmly, is believed to be the distinguishing feature of applicant's invention, and to constitute a valuable and useful improvement in the use of which the applicant should be protected."

The applicant, Leslie, was clearly in error in stating that two or more cables had been uniformly employed in the prior art. The patent in suit was applied for January 23, 1897, and issued May 3, 1898, after many changes and limitations as shown by the file wrapper.

In May, 1890, George A. Blackburn and Daniel J. Brimm applied for United States letters patent, No. 443,954, issued December 30, 1890, for temporary binder, which plainly and distinctly shows and describes a binder with a single cable as distinguished from the employment of two or more cables. This binder had two back pieces, A and A' (called "cases" in the patent), to which respectively, as in the patent in suit, the covers of the ledger were hinged. In Blackburn and Brimm the cases are hollow. A has a revoluble rod, C, extending its entire length and projecting at one end so as to permit the adjustment of a key for turning it. Attached to this is a strip of suitable material, such as stout cloth, which extends through a slot in the rear part of A, and has, at-

tached to its outer edge, a rod which is glued in a groove on the outer side of A′, the outer back piece. By turning the rod, C, A and A′ would be drawn towards each other, and this back of cloth or leather shortened accordingly. But this back piece itself is aside from the "ribbon G, which is preferably made of metal, but may be of other suitable material" used for drawing the two back pieces, A and A′, together, and firmly and unyieldingly binding the sheets or leaves of paper between them. This ribbon, G, which answers to the cord or cable of the patent in suit, is a single ribbon, enters A at a slot, g, near one end of A, passes through its interior nearly its entire length, and passes out at a slot, g, near its other end. There is perfect freedom of movement to this ribbon in the case or back piece, A, and by taking hold of the ends of the ribbon we may pull it readily in either direction so as to have the projecting ends of equal length. Back piece A′, for shortening or taking up the ribbon and thereby drawing the back pieces A and A′ towards each other until they meet, or until they firmly and unyielding bind the interposed leaves, has a screw-threaded rod, C′, extending from end to end of A′ and attached to the case of A′ at its ends. The screw thread of one end of C′ has a pitch opposite the screw thread of the other end, and each screw thread terminates at the center of the length of the rod. Mounted on each end of this rod, C′, is a block having a screw-threaded perforation which fits the screw thread of C′. These blocks move freely in A′, being carried backward and forward on the rod, C′, as it is turned the one way or the other by means of a key which is adjusted to the end of C′ which projects from the case or back piece, A′. To each of the before-mentioned free ends of the ribbon, G, is attached a block or shoulder, G′, which are respectively inserted within the case or back piece, A′, through a slot, one slot near each end of A′, and on the inner sides of the said screw-threaded blocks respectively; that is, on the sides of the blocks nearest the center of the screw-threaded rod, C′. It is seen that by turning C′ in one direction the screw-threaded blocks, and consequently the blocks attached to the ends of the ribbon, respectively, are carried inwardly—that is, towards the center of C′—and that this takes up and shortens the ribbon between the cases or back pieces, A, A′, and that they are thus drawn towards each other evenly or uniformly, and held unyieldingly, as are the leaves placed between them. Turn the rod, C′, in the other direction, by means of the key, and the tension on the ribbon is released, whereupon A and A′ may be separated from each other, the leaves released, and some taken out and others inserted, etc.

It is seen that we may substitute a cord or cable for the ribbon and the operation of the binder is the same, and the result the same in every respect. He who should have substituted a cord or cable for the ribbon would have infringed. "Ribbon" is one of the synonyms of "cord." Soule's Dictionary of English Synonyms. A cord is a string, and a string is a ribbon, broadly.

In this Blackburn and Brimm binder we take up, by turning the key, the ribbon from both directions evenly. Loosen the back pieces or cases to their full extent, and leave the ribbon drawn taut at one end

with the far ends of A and A' together, and turn the screw-threaded rod, C', and the ribbon, freely movable through A, will adjust itself, and A and B will come together evenly. Here Blackburn and Brimm is superior to Leslie. It is said that in Blackburn and Brimm the ribbon, or cord, or cable, whatever is used, will bind at the slots where they · emerge from A. Possibly this is so, as here the ribbon turns at a right angle. In Leslie the cord or cable, after passing through the slot or aperture in back piece, A, on its way to the spindle, turns at a right angle, but is made to pass over a pulley or roller, and so, at the other end of A, before passing out on its way to back piece, B, it passes over another roller or pulley. This, of course, relieves the friction and consequent binding, but the idea is so old and common that, if necessity existed in Blackburn and Brimm, the most common skill would have overcome the difficulty. In short, the take-up device of Leslie, as a whole, is different from that 'of Blackburn and Brimm, and has some advantages, but as to ultimate results the idea is the same. Both have the same object, and both accomplish the same result in substantially the same way but by different mechanical means. That the mechanism of Blackburn and Brimm tautens the cord or cable or ribbon uniformly throughout its entire length and securely holds it in place cannot be questioned.

We should now go to the prior art for the spindle for taking up the cord, the ratchet and spring-controlled dog for holding it, if they may be found therein. In Geesaman, No. 150,148, dated April 28, 1874, we have two boards or suitable stiff material for pressing and holding the sheets of paper together; a revoluble drum attached to the outside of one of them, to which is attached the cord or cords connecting the two pieces together, which pass through staples to prevent displacement. By turning the drum all loose cord is taken up and wound thereon, and the holding boards are brought firmly together, pressing the leaves or sheets of paper between them. When thus tightened the drum is prevented from turning in the other direction and loosening the cord by a thumbscrew instead of a ratchet and spring-pressed dog. The one is the well-known equivalent of the other.

Turning to Blackburn and Brimm, United States letters patent No. 410,346, dated September 3, 1889, for temporary binder, we find perforated leaves with slots running therefrom to the edge of the leaf so as to permit their engagement with the bands or strips running from back piece to back piece, and which, wound up, taken up, or shortened, draw the back pieces together. In this patent the back pieces are called "boxes" or "cases." The bands or strips extending from back piece to back piece, by turning a roller, are wound thereon, thus bringing the cases or back pieces together. We may here substitute a cord or cable for the bands and have the same mode of operation and precisely the same result. This roller is stopped at any point in the winding up and , held firmly in position and prevented from unwinding, turning backward, by means of a ratchet wheel, which may be engaged with a double-toothed pawl when it is desired to prevent the shaft from turning, and which is made accessible to the operator. Says the patent, "or any other convenient form of ratchet and pawl might be employed."

Says this patent on this subject:

"To one of the boxes there are connected bands or strips 15, made of heavy tape or of metal, which said bands or strips are carried through openings. b, formed in the inner wall of the opposite box, there to be secured to a roller, 16, which is provided with a head, 17, of proper form to be engaged by a key or wrench socket. Upon the shaft, 16, there is mounted a ratchet wheel, 20, that is engaged at such times as it is desired to hold the shaft from turning by a double-toothed pawl, 21, the stem of the pawl extending upward through a longitudinal slot, c, formed in the upper wall of the case, the head of this stem riding in a recess, d, so as to leave the upper face of the box flush; or any other convenient form of ratchet and pawl might be employed. In connection with the head of the stem, 21, we arrange a spring, 22, said spring being employed to hold the double-toothed pawl in engagement with the ratchet, 20, or to hold said pawl out of engagement with the ratchet * * *

"In certain instances it might be desirable to bind leaves that were not specially cut for use in connection with our binder; and to this end we employ the modified construction shown in Fig. 10, wherein the bands are shown at 15a, and run in planes at right angles to the planes in which the bands. 15, run, the post or shaft, 16a, to which the bands are secured, being centrally arranged, as shown in Fig. 10. * * *

"The binder is useful as a file for letters, bills, invoices, etc.; but for this purpose we would employ the construction shown in Fig. 10, these letters, etc., being bound in such a manner as to enable the bookkeeper to arrange them alphabetically or chronologically, and any one of the letters may be withdrawn and replaced at pleasure without moving the other sheets held by the binder."

In this patent we have a modified form (Fig. 10) in which the bands or strips pass from the one case or back piece to the other from points near the respective ends of one to corresponding points in the other, then enter that other through slots or openings and turning at right angles pass to and connect with a revoluble post or shaft located centrally of the ends of said box or case containing it. This post or shaft has the ratchet, etc., and by turning it as before mentioned the bands are wound up thereon, evenly and uniformly from each direction. This modified form of Blackburn and Brimm, shown in their earlier patent, would be practically the same as Leslie, should we place therein the pulleys or rollers for the bands to pass over on entering the box or case and turning towards the shaft or spindle. It was improvement to add them, but not invention. So in this modified form of case and attachment of the bands to the spindle the band or strip is not continuous. There are two, one coming from one end, the other from the other end, and ending at the spindle and attached thereto, but on turning the spindle the two bands wind up evenly and uniformly. Here, to have satisfactory work and results, we are not compelled to even up the length of cord or band each side of the spindle by hand before we commence the turning of the spindle. It is seen that, in improving on the prior art, Leslie adopted the drum, or its equivalent, the spindle, with ratchet and dog, to take up the cord or cable, and the modified form of Blackburn and Brimm, shown in their earlier patent, in taking his cord or cable into the back piece, where it was to be taken up, instead of the screw-threaded rod with blocks having perforated threaded portions fitting the thread of the rod mounted thereon as shown in Blackburn and Brimm patent of 1890, and where it is described as follows:

"Mounted longitudinally in the cases, A and A', are the rods, C and C', said rods having squared ends, c, projecting through the lower ends of the

cases, and by means of which the rods may be turned. The rods, C and C', are held in position in their respective cases by the pins, c', which project through the lower portions of the rods and rest against the inner surface of the case ends. * * *

"The rod, C', is screw-threaded, as shown, the screw thread of one end having a pitch opposite to the screw thread on the other, and each screw thread terminating in the center of the rod.

"Mounted on each end of the rod, C', is a block, F, having a perforated threaded portion which fits the thread of the rod, C', the outer contour of the block corresponding to the inner contour of the case, A'. The blocks, F, will thus be movable in the case, A, and when the rod, C', is turned in one direction the blocks, F, will move toward the center of the rod, and when turned in the opposite direction the blocks, F, will move toward the ends thereof.

"A ribbon, G, which is preferably made of metal, but may be of other suitable material, extends nearly the entire length of the case, A, and passes out through the slots, g, near each end of the case, and through the slots g of the opposite case, A', the ends of said ribbons being provided with blocks or shoulders, G', which are placed within the case, A', on the inner sides of the blocks, F, the case, A' having near each end a slot, g', in the angular face, a', thereof, to permit the easy insertion of the shoulders, G'. The two cases, A A', and the covers, B, hinged thereto, will thus be held together by the ribbon, G, and by turning the rod, C', so as to force the blocks, F, toward the center of the rod, the ends of the ribbon will likewise be forced toward the center of said rod, thus bringing the two cases nearer together, and by turning the rod in the opposite direction there will be sufficient slack in the ribbon to afford more space between the cases.

"In using the device the papers, leaves, or other articles to be bound are placed with their inner edges between the cases, A and A', and by means of the rod, C, the back, D, is adjusted to the thickness of the material, and by means of the rod, C', the blocks, F, shoulders, G', and ribbons, G, the cases are forced toward each other, thus firmly binding the material between the cases in position. As the covers, B, project below the lower ends of the cases, A and A', the ends of the rods, C and C' will not project below the lower edges of the covers, and the binder and contained material may be placed upon a shelf, like an ordinary book."

## Defendants' Structure.

Turning to defendants' binder, alleged to infringe, we find: (1) Two solid back pieces of wood hinged to two covers for the completed ledger or binder. (2) These back pieces have corresponding perforations, one near each end, for the passage of the cord, cable, ribbon, or strap used to draw the two back pieces together with the leaves interposed. (Defendants use a strap or very heavy cord.) (3) The two covers are hollow; one for substantially its entire length and width, which we will name A, and the other for about one-half its length and substantially its entire width, which we will name B. These covers are made up of a covered framework. The covers, except at the edges, are of thin sheet iron or tin—a thin board might answer the purpose—on a frame, and are covered in turn by heavy cloth or leather. The covers at the ends next the back pieces have apertures corresponding to those in the back pieces which extend into the hollow portions. (4) In B we have a semicircular block firmly attached to the interior of the cover. In some binders this is omitted. (5) In A, in the hollow portion thereof, we have a revoluble screw-threaded rod extending from end to end of the cover, and journaled, or set, at one end, in the crossbar of the frame next the back piece, and at the outer end journaled in the outer or end crossbar of the frame, and having its outer end projecting into a recess in the frame, and so shaped as to permit a key

to be attached for the purpose of turning the rod.    Mounted on this screw-threaded rod, and at right angles thereto, is an arm, or long block, having at its center a screw-threaded perforation which fits the screw thread of the rod.    The ends of this arm are substantially opposite the openings in the back piece and crossbar of the frame before mentioned, and each end, in some constructions, has an aperture therethrough for securing thereto the ends of the single cord, cable, ribbon, or strap.    In all of defendants' structures that I have seen a heavy leather thong or strap is used.    Whether it be round or flat is, in my judgment, immaterial.    This heavy strap or thong passes through B and behind the semicircular block, when used, and the ends respectively pass through the openings or apertures in the frame of B, into and through the corresponding apertures in both back pieces and the frame of A, and into the hollow portion of A, where they are attached to the respective ends of the arm, or long block, before mentioned, mounted on the screw-threaded rod and at right angles thereto.    By affixing the key to the outer end of the screw-threaded rod, and turning it in one direction, the arm travels away from the back piece at the inner end of A, draws evenly and uniformly on both ends of the strap or thong, and draws the other back piece and cover with it until the back pieces are brought firmly together, clasping, holding, and firmly and unyieldingly holding them and any interposed leaves or sheets of paper. By turning the key and consequently the rod in the other direction, the arm is made to travel in the opposite direction—that is, towards the back pieces—and the strap or thong is loosened and the back pieces may be separated from each other, the leaves detached, and new ones inserted or additional ones inserted.    The entire apparatus for taking up or shortening the strap, or thong, or cable, or whatever is used in its place, is within the hollow of the cover, A, and this apparatus has no rollers or pulleys, no spindle, no ratchet, no spring-controlled dog. It is a substantial duplication of the means for shortening the strap, thong, cord, or cable, found in the patent to Blackburn and Brimm of December 30, 1890, No. 443,954, but simplified.    The screw-threaded rod, with its attachments mounted thereon, instead of being located in one of the cases, or back pieces, is placed in the hollow cover, and, instead of standing parallel to the back pieces, stands at a right angle thereto.    By thus changing the location and angle at which it stands, and lengthening the arm or block and substituting one arm for two, we get a straightaway pull on the strap, cord, or cable, and do away with considerable friction—the turning of two corners.

If by any hocus-pocus we construe the defendants' device as an infringement of Leslie, we must construe Leslie as an infringement of Blackburn and Brimm's 1890 patent.    Leslie was not, in any sense, a pioneer.    He worked along a certain line in improving a take-up device utilizing well-known devices, which defendants do not use, but he did not obtain a monopoly of all improved means for effecting that end.    He did not cut off the right of Blackburn and Brimm to use or improve their device in which they use other elements to create their take-up device.    Giving to Leslie the full benefit of all of the doctrine of equivalents to which he is entitled, he was not entitled to include in his means and monopolize Blackburn and Brimm's screw-threaded

rod with a screw-threaded arm mounted thereon, or any modifications thereof or improvements thereon operated by a key. Clearly he did not monopolize the prior art or entirely different means operating in a different way to produce a given result. His particular combination of old elements to constitute his means he did cover by his patent, but not other combinations of other elements operating differently.

In Westinghouse v. Boyden Power Brake Co., 170 U. S. 556, 18 Sup. Ct. 716, 42 L. Ed. 1136, Mr. Justice Brown, quoting from and approving Burr v. Duryee, 1 Wall. 531, 570, 17 L. Ed. 650, said:

"Much less can any inference be drawn from the statute that an inventor who has made an improvement in a machine, and thus effects the desired result in a better or cheaper manner than before, can include all previous inventions and have a claim to the whole art, discovery, or machine which he has improved. All others have an equal right to make improved machines, provided they do not embody the same or substantially the same devices or combination of devices which constitute the peculiar characteristics of the previous invention."

And at pages 568 and 569 of 170 U. S., at page 722 of 18 Sup. Ct. (42 L. Ed. 1136), he further said:

"'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650, 'involves substantial identity, whether that identity be described by the terms, "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent."'

"We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there. As was said in Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650, an infringement 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are, therefore, mere equivalents for those of the other.'"

There is no identity of operation between complainant's take-up device and that of the defendants. True, by operating each the same ultimate result, the bringing together of the back pieces, cases, and the consequent binding of the interposed leaves, is attained. The function of each device is to do this; but a function cannot be patented. See Westinghouse v. Boyden Power Brake Co., 170 U. S. 556, 557, 18 Sup. Ct. 707, 42 L. Ed. 1136.

Conceding that the functions of two devices are practically the same, there must be substantial identity of means to justify us in saying they are mechanical equivalents. Same case, page 571 of 170 U. S., 18 Sup. Ct. 707, 42 L. Ed. 1136. Leslie winds up all loose cord, cable, or strap on a revoluble spindle having a ratchet and held from unwinding by a spring-pressed dog, while defendants do not wind up the loose cord, cable, or strap at all. Take away Leslie's dog, which defendants do not use, and a slight pull will unwind the cord and loosen the bound sheets or leaves. With the defendants' device no amount of pulling can revolve the screw-threaded rod backward and loosen the strap. But the defendants used and had the right to use the same device, substantially, they now use before Leslie came into the field at all. Leslie must be deemed to have incorporated into his claim the same means he has fully described in his specifications. He has not given those described as a preferred form, but as the form and the devices of his take-up mechanism. He can lay no claim to the spindle with a perforation to permit the passage of the single cord therethrough and a ratchet attached, all controlled by the dog. This was an old and well-known mechanical device. See patent to Huber and Miller of November 3, 1896, No. 570,803. So the straightaway pull, utilized by the defendants, was shown in this art as early as 1884. See Slade, English patent, No. 597. The lazy tongs are also shown in the prior art, and constitute such an old and well-known mechanical device that any one was at liberty to use them. They play no important part in this controversy. They have nothing to do with the actual operation of the device.

From all the evidence and exhibits in the case, I am satisfied that the claims of the Leslie patent in issue here (complainant's), broadly construed so as to cover defendants' device, are void as failing to disclose patentable invention in view of the prior art; that, construed somewhat narrowly, as they must be, having the prior art in view, defendants do not infringe.

There will be **a decree dismissing the bill with costs.**